OPINION
On May 23, 1997, Ramakant Mandalaywala filed a lawsuit against Rashmi N. Yajnik in which he claimed that Mr. Yajnik owed him money based upon investments in working oil wells and as a result of a personal loan. Following service of process, Mr. Yajnik filed an answer which alleged that no funds were due. Mr. Yajnik also filed a counterclaim which alleged that Mr. Mandalaywala was indebted on an account due. Mr. Mandalaywala filed a reply alleging that no funds were owed by him. The case was originally set for trial in May of 1998.
Discovery proceeded slowly and the parties agreed to continue the trial date on a number of occasions. Mr. Mandalaywala's counsel began filing motions asking for default judgment for failure of Mr. Yajnik to provide discovery. On June 1, 1999, the trial judge journalized an order requiring Mr. Yajnik to provide discovery or show cause as to why judgment should not be rendered against him.
On December 2, 1999, an agreed entry was filed ordering that Mr. Mandalaywala receive directly from the driller, producer or gas company all future royalty or dividend payments derived from his interest in the oil and gas wells.
On December 6, 1999, the trial judge granted a motion to compel discovery and ordered the payment of attorney fees and expenses. On January 19, 2000, the trial judge refused to grant default judgment. Attempts at mediation proved unsuccessful. The case ultimately proceeded to trial in April of 2000.
On May 17, 2000, the trial judge rendered a decision granting judgment in the sum of $59,800 on behalf of Mr. Mandalaywala. The trial court also granted prejudgment interest at the rate of ten percent per annum beginning January 28, 1993. A final judgment was journalized June 1, 2000.
Mr. Yajnik (hereinafter "appellant") has pursued a direct appeal, assigning four errors for our consideration:
 I. The Trial Court erred to the prejudice of Defendant-Appellant by awarding prejudgment interest when the contract between the parties was rescinded pursuant to R.C. § 1707.43.
 II. The Trial Court erred to the prejudice of Defendant-Appellant by entering judgment for Plaintiff-Appellee based upon a violation of a statute not specifically pled by Plaintiff-Appellee, to wit: Chapter 1707 of the Ohio Revised Code, without applying the limitation on the bringing of an action thereunder, which limitation is contained in that statute.
 III. The Trial Court erred to the prejudice of Defendant-Appellant as a matter of law by failing to give Defendant-Appellant credit for monies paid to Plaintiff-Appellee as a return on his investment, Decision in Favor of Plaintiff Following Trial to Court at p. 4, and by failing to terminate the Order which directed that ongoing revenues from the subject oil and gas wells be paid directly to Plaintiff-Appellee, when the Court rescinded the contract subject of this action.
 IV. The trial court erred to the prejudice of Defendant-Appellant in finding that the November 2, 1993, transfer of Fifteen Thousand Dollars ($15,000.00) was a "personal loan" and not an investment pursuant to contract, when such finding was against the manifest weight of the evidence.
We address appellant's second assignment of error first. Appellant asserts the trial court erred in rendering judgment against him based upon a violation of R.C. Chapter 1707 because appellee failed to specifically plead such in the complaint. Further, appellant contends the R.C. Chapter 1707 claim is barred by the applicable statute of limitations.
Appellant is correct insofar as Mr. Mandalaywala (hereinafter "appellee") did not specifically assert in the complaint a violation of R.C. Chapter 1707. Clearly, the better practice is for a lawsuit which centers around the sale of unregistered securities to include in the complaint the specific statutes which are alleged to have been violated. However, Civ.R. 15(B) states that when issues not raised by the pleadings are tried by express or implied consent of the parties, such issues will be treated as if they had been raised in the pleadings.
Here, the parties were on notice that the registration requirements in R.C. Chapter 1707 were at issue. Appellant was questioned about the registration issues at trial without objection. In addition, appellee specifically addressed appellant's alleged violations of R.C. Chapter 1707 in his post-trial brief. The trial court's decision was not rendered until almost one month after appellee's post-trial brief. Therefore, appellant yet again had the opportunity to object to such; however, he failed to do so. Accordingly, the issue of violation(s) of R.C. Chapter 1707 was tried by the consent of both parties. Hence, the trial court did not err in basing its judgment on appellant's violation(s) of R.C. Chapter 1707.
Appellant also contends that the trial court erred in failing to apply the statute of limitations applicable in securities law cases. As noted above, appellant was on notice of appellee's securities law claim. Appellant impliedly consented to such claim, and he failed to raise the issue of the statute of limitations applicable to such claim. Therefore, appellant waived the issue. See State ex rel. Tubbs Jones v. Suster
(1998), 84 Ohio St.3d 70, 75.
Given all of the above, the trial court did not err in basing its decision on violation(s) of R.C. Chapter 1707. Accordingly, appellant's second assignment of error is overruled.
We now address appellant's fourth assignment of error. The trial court found that a certain $15,000 check was a personal loan and not an investment. Appellant contends this finding was against the manifest weight of the evidence. Judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279. After reviewing the evidence, we find there was sufficient competent, credible evidence supporting the trial court's finding.
On January 28, 1993, appellee and appellant signed an agreement for appellee to invest in oil and gas wells in Ohio. Appellee wrote checks totalling $19,800 that day. Appellee wrote a third check for $20,000 on June 27, 1993. On November 2, 1993, appellee wrote two more checks. One of these checks was for $5,000 and the other was for $15,000. The parties are in agreement about these basic facts; however, they dispute whether the $15,000 check was a personal loan to appellant or another investment by appellee.
The November 2, 1993 check for $5,000 was made out to "Rail Petroleum," one of appellant's unincorporated associations. The $15,000 check, written at the same time, was made out to appellee personally. (Tr. 50; Plaintiff's exhibit No. 4.) Appellee testified that appellant requested such loan in order to meet some of appellant's "immediate needs" and that appellant promised to "return" the money in two weeks. (Tr. at 97-98.) Appellee testified that he made it clear to appellant that this was a personal loan and not an investment. Id. at 98. Appellant disputes this and testified that appellee could take only $5,000 more in write-offs for 1993 and that appellee was going to write-off the $15,000 "investment" in 1994. Id. at 51.
We note that this court gives deference to the trier of fact as the trial court observes the witnesses and is best able to use such observation in weighing the credibility of the proffered testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Given this and the evidence presented at trial, we conclude the trial court's finding that the $15,000 check was a loan was not against the manifest weight of the evidence.
Accordingly, appellant's fourth assignment of error is overruled.
We next address appellant's third assignment of error. The trial court found appellant violated R.C. Chapter 1707 and, therefore, it rescinded the sales transactions. The trial court awarded appellee $59,800, which reflects the payments appellee made to invest in the oil and gas wells ($44,800) and the $15,000 loan to appellant. The trial court indicated that appellee was entitled to the $44,800 regardless of the fact that appellee received dividends from the investment and/or took certain tax write-offs.
Appellant contends the trial court erred in failing to apply a credit of $11,451.98 against this judgment based on appellee's receipt of $11,451.98 in dividends. Appellant asserts that a rescission contemplates putting the parties in the positions they were in prior to the transactions at issue. Therefore, appellee should not, in effect, be entitled to keep the dividends he received as a result of the investments. In addition, appellant contends the trial court erred in failing to terminate a prior entry which ordered revenues from the wells be transferred directly to appellee. For the reasons that follow, we find the trial court did not err in failing to reduce the judgment by the amount appellee received as dividends from the investments.
In Crater v. Internatl. Resources, Inc. (1993), 92 Ohio App.3d 18, the appellate court dealt with a situation similar to the one in the case at bar. The plaintiff had purchased working interests in oil and gas leases, and the plaintiff had earned $36,541.99 as a return on her investment. Id. at 20-21. The trial court found the seller had violated Ohio securities law and determined that pursuant to R.C. 1707.43, the plaintiff was entitled to restitution of the purchase price without a setoff for any tax benefit or income received from the investment. Id. at 21.
The defendant-seller argued on appeal that the judgment should be reduced by the income the plaintiff received from the working interests and by any tax benefits taken. Id. at 25. The defendant contended that the purpose of R.C. 1707.43 was to put the parties in the position they had been in prior to the investment. Id. The court of appeals rejected this argument and stated that the rescission remedy in R.C. 1707.43 was not an equitable remedy but a statutory right derived from the illegality of the transaction. Id., citing Sorenson v. Tenuta (1989),62 Ohio App.3d 696, 703. The court noted that R.C. 1707.43 specifically provided for full restitution of the plaintiff's purchase price and indicated that R.C. 1707.43 was designed to redress the defendant's unlawful securities transactions by restoring the full amount paid by the purchaser regardless of the ultimate success or failure of the investment:
 *** The fact that [the plaintiff] received a return on her investment and may have enjoyed certain tax benefits does not change the illegality of the [defendant's] actions nor does it alter the operation of the statute. *** Crater at 25.
Indeed, R.C. 1707.43 specifically provides for full recovery of the purchase price:
 Every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale *** [is] liable to such purchaser *** for the full amount paid by such purchaser ***. [Emphasis added.]
This court in Sorenson, supra, addressed a similar issue in a case involving the sale of unregistered securities. The trial court rescinded the securities transaction and awarded the plaintiff $18,173 — the amount he actually paid for the securities. Id. at 698, 703. The defendant argued that the trial court erred in awarding such an amount. This court stated that R.C. 1707.43 provides the purchaser with the right to recover the full amount paid, and the fact that the plaintiff may have deducted losses on prior income tax returns or claimed various tax shelters did not inure to the defendant's advantage. Id. at 703.
We agree with the reasoning set forth in Crater and Sorenson. First, R.C. 1707.43 specifically calls for rescission and recovery of the "full
amount paid" by the purchaser. Appellant equates the rescission remedy in R.C. 1707.43 with the general contract principle that rescission of a contract puts the parties in the positions they were in prior to the contract. However, the right to recover in the case at bar is not based on contract, it is based upon a violation of Ohio's blue sky laws. Such laws provide for a specific remedy — rescission and recovery of the full purchase price.
The fact that a purchaser of securities, which later become the subject of a lawsuit under R.C. Chapter 1707, may derive a monetary benefit such as a tax deduction or the receipt of dividends from such unlawful transaction does not take away from the illegality of the transaction. The purposes of Ohio's blue sky laws are to protect Ohio consumers. In addition, the purpose behind registration requirements is to "prevent those persons willing to market worthless or unnecessarily risky securities from soliciting the purchasing public without first subjecting themselves and their securities to reasonable licensing and registration requirements." Bronaugh v. R. E. Dredging Co. (1968), 16 Ohio St.2d 35,40-41.
Such purposes would not be served if we allowed a deduction from the full purchase price based of any dividend received. Despite the illegality of a transaction, a plaintiff could conceivably make a return that exceeds the full purchase price. Under appellant's theory, the violator would have no liability to such plaintiff. There is simply no support for such a result either in R.C. 1707.43's specific language or based upon the purposes of R.C. Chapter 1707 in general.
Accordingly, we find the trial court did not err in failing to deduct from appellee's award those amounts attributable to dividends received or any tax benefit derived from the investments. To this extent, appellant's third assignment of error is overruled.
Appellant also contends that the trial court erred in failing to terminate its prior entry which ordered revenues from the wells be transferred directly to appellee. On December 2, 1999, an agreed entry was filed, ordering appellee receive directly from the driller, producer or gas company all future royalty or dividend payments derived from his interest in the oil and gas wells. However, because the trial court's judgment rescinded the transactions, appellee no longer owns any interest in the oil and gas wells. Therefore, appellee can no longer receive revenues derived from such former interests. However, and in line with the previous discussion, appellee was entitled to keep any revenue generated from such interests prior to the judgment rescinding the transactions. Accordingly, and to this extent only, appellant's third assignment of error is sustained. The trial court is instructed to terminate the December 2, 1999 order effective June 1, 2000 the date of the final judgment herein.
In summary, appellant's third assignment of error is overruled in part and sustained in part to the extent discussed above.
In his first assignment of error, appellant contends the trial court erred in awarding prejudgment interest. Appellant asserts prejudgment interest is improper under R.C. 1343.03. R.C. 1343.03(A) states, in pertinent part:
 *** [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, *** the creditor is entitled to interest at the rate of ten percent per annum ***.
This court has previously addressed the issue raised by appellant. As indicated above, in Sorenson, the trial court found the defendant violated R.C. Chapter 1707 and rescinded the transaction. Id. at 698. The trial court awarded the plaintiff damages in the amount of the purchase price plus interest from the date the sale was completed (i.e., prejudgment interest). Id. The defendant asserted it was improper to award prejudgment interest.
This court stated that the issue was whether rescission and recovery of the purchase price constituted money due and payable under the sales agreement or was another form of damages. Id. at 703. This court found that rescission and recovery of the purchase price under R.C. 1707.43 was another form of damages, specifically, a statutory right derived from the illegality of the transaction and not a recovery applicable from the face of the transaction. Id. Hence, R.C. 1343.03(A) was not applicable.
In light of our decision in Sorenson, the trial court here erred in awarding prejudgment interest on the entire judgment. However, the total amount of such judgment, $59,800, included more than just an award for violation of R.C. Chapter 1707. It included $15,000 for the personal loan made by appellee to appellant. R.C. 1343.03(A) provides for interest to run from the date money becomes due on any written instrument. Here, such written instrument was the $15,000 loan check. The check was written on November 2, 1993. Appellee testified that appellant promised to pay the money back within two weeks. (Tr. 97.) Hence, the trial court could properly award prejudgment interest on the $15,000 loan. Such interest began to run when the loan became due and payable — two weeks after November 2, 1993, on November 16, 1993.
In light of the above, the trial court erred in awarding prejudgment interest on $44,800, the amount constituting a return of the purchase price pursuant to R.C. Chapter 1707. The trial court properly awarded prejudgment interest on the $15,000 loan. However, such interest did not begin to run until November 16, 1993. Accordingly, appellant's first assignment of error is sustained to the extent discussed above.
In summary, appellant's first assignment of error is sustained to the extent discussed above, the second and fourth assignments of error are overruled, and the third assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is vacated, and this cause is remanded for entry of a new judgment in accord with this opinion.
LAZARUS and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.